IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| BONNIE KRAMER, | § § | |
| PLAINTIFF, | § § | |
| | § | CIVIL ACTION NO. 1:13-CV-670-LY |
| VS. | § § | |
| BRODIE OAKS CENTER, LTD. | § § § | |
| DEFENDANT. | § | |

**DEFENDANT'S AMENDED 12(B)(1) MOTION TO DISMISS FOR LACK OF SUBJECT-MATTER JURISDICTION AND 12(B)(6) MOTION TO DISMISS FOR PLAINTIFF'S FAILURE TO STATE A CLAIM, OR IN THE ALTERNATIVE, FOR A MORE DEFINITE STATEMENT, AND BRIEF IN SUPPORT**

TO THE HONORABLE JUDGE OF SAID COURT:

Defendant Brodie Oaks Center, Ltd. ("Defendant") hereby seeks dismissal of all claims asserted against it by Plaintiff Bonnie Kramer ("Plaintiff"), in her *Amended Complaint*,[1] based on Rule 12(b) of the FEDERAL RULES OF CIVIL PROCEDURE. In the alternative, Plaintiff requests the Court to order Plaintiff to provide a more definite statement of each of these claims, pursuant to Rule 12(e) of the FEDERAL RULES OF CIVIL PROCEDURE.

---

[1] The defects in *Plaintiff's* original *Complaint* (ECF No. 1), which Defendant sought dismissal of in its original *Motion to Dismiss* (ECF No. 6), continue to permeate Plaintiff's *Amended Complaint* (ECF No. 7). Because these defects remain in the new pleading, Defendant's original *Motion to Dismiss* is arguably not moot. *Lone Star Fund V (U.S.) v. Barclays Bank PLC*, 3:08-CV-0261-L, 2008 WL 4449508, at *7 (N.D. Tex. Sept.. 30, 2008) ("Defendants should not be required to file a new motion to dismiss simply because an amended pleading was introduced while their motion was pending. If some of the defects raised in the original motion remain in the new pleading, the court may simply consider the motion as being addressed to the amended pleading. . . . To hold otherwise would be to exalt form over substance." (citing Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, 6 FED. PRAC. & PRO. CIV. 2d § 1476 (2008)); *contra Timberlake v. Synthes Spine, Inc.*, No. V-08-4, 2010 WL 743927, at *4 (S.D. Tex. Feb. 25, 2010) (recognizing that if an amended complaint does not incorporate the earlier pleading, a court may deny as moot a motion to dismiss that was filed before the operative amended complaint). In an abundance of caution, Defendant hereby files an *Amended Motion to Dismiss*, addressing Plaintiff's live pleading.

## I.
## PRELIMINARY STATEMENT

Defendant seeks dismissal of all of the claims asserted against it by Plaintiff, for numerous reasons. First, the Court does not have subject-matter jurisdiction over this case because Plaintiff has no Article III standing. Second, Plaintiff's *Amended Complaint* fails to provide fair notice of any of the claims asserted—despite the fact that these defects were pointed out in Defendant's original *Motion to Dismiss*—and it fails to provide factual allegations that, even when taken as true, are plausible and rise above mere speculation. Instead, Plaintiff's *Amended Complaint* regurgitates—almost verbatim—the same nondescript factual allegations contained in the other 22 lawsuits Plaintiff has filed in the U.S. Western District of Texas—Austin Division, within the past year alone.

The U.S. Supreme Court is very clear that "a complaint does not suffice if it tenders naked assertions devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal citations omitted). Dismissal of Plaintiff's claims is appropriate because each claim is entirely bereft of any factual or legal grounds that would suggest Plaintiff is plausibly entitled to relief.

For the same reasons, although strictly in the alternative, Defendant requests that Plaintiff be ordered to amend her *Amended Complaint* to provide Defendant with fair notice of all claims she is asserting so that it may prepare a proper response.

## II.
## FACTUAL BACKGROUND

Defendant is a premier retail center located in Austin, Texas. Plaintiff is a resident of Cuyahoga County, Ohio (*Am. Complaint*, ¶ 4). Plaintiff is a serial-filer and self-described "tester" who personally visits public accommodations and seeks out barriers that she believes

violate the AMERICANS WITH DISABILITIES ACT ("ADA"). *See Kramer v. Midamco*, 656 F. Supp. 2d 740, 742 (N.D. Ohio 2009) (identical plaintiff; recognizing that Ms. Kramer brands herself as a "tester" and member of the non-profit advocacy group, Disabled Patriots of America, Inc., in its order granting defendant's motion for summary judgment).

Within the past year alone, Plaintiff has filed 22 other lawsuits in the U.S. Western District of Texas—Austin Division, alleging similar (if not identical) Title III ADA claims against local retail establishments. Specifically, Plaintiff mechanically claims that: (1) she has family in Austin, Texas; (2) she visited a defendant's retail establishment while in Austin, Texas; (3) she encountered "architectural barriers" at a defendant's retail establishment, and (4) she intends to return to the defendant's retail establishment when she revisits her family in Austin, Texas.

Notably, after Defendant's original *Motion to Dismiss* was filed in this lawsuit, Plaintiff filed an *Amended Complaint*, adding the following (none of which cure the defects complained of by Defendant): (1) she "has a son who lives in Austin, Texas and has been to the area on several occasions the past few years" (*Am. Complaint*, ¶ 6); (2) she patronized several [unidentified] stores [of Defendant] and ate lunch at Hunan Lion" (*Am. Complaint*, ¶ 7); and (3) "[o]n information and belief, Defendant engaged in a pattern and practice of discriminating against qualified persons with disabilities . . . ." (*Am. Complaint*, ¶ 9).

The alleged ADA violations Plaintiff complains of are equally nondescript and appear to be cut and pasted from the other lawsuits she has filed in the U.S. Western District of Texas—Austin Division:

> (a) The facility does not have a continuous accessible route that connects all the accessible buildings, building elements, and accessible spaces to [sic] that an individual in a wheelchair can access all the buildings, elements, and spaces.

(b) The doors at the property have excessively high thresholds which create a dangerous condition to an individual in a wheelchair.

(c) The curb ramps at the facility have excessively steep cross slopes which create a dangerous condition to an individual in a wheelchair.

(d) There is ramp servicing at the facility that is inaccessible to an individual in a wheelchair.

(f) The accessible route at the facility has excessively steep cross slopes that create a dangerous condition to an individual in a wheelchair.

(g) There are designated accessible parking spaces that do not have wide enough access aisles for an individual in a wheelchair to utilize.

(h) There are exposed pipes under the sink in the public restroom which create a dangerous condition to an individual in a wheelchair.

(i) There is insufficient clearance in the toilet compartment of the public restroom for an individual in a wheelchair to utilize such.

(j) The dispensers in the public restroom are located too high for an individual in a wheelchair to reach.

(k) The grab-bars in the toilet compartment of the public restroom are inaccessible to an individual in a wheelchair.

(l) There is insufficient knee and toe clearance at the sink in the public restroom in order for an individual in a wheelchair to utilize such.

(m) Defendant maintains a policy that allows for trash-receptacles to obstruct access to the paper towel dispenser in the public restroom.

(n) The toilet flush in the public restroom is not located on the wide side of the toilet, thus causing an individual to have to reach across their own wastes in order to utilize the facility.

(*Am. Complaint*, ¶ 15).

Notably, the *Amended Complaint* seeks injunctive relief and attorneys' fees (*Am. Complaint*, p. 8).

## III.
## ARGUMENTS AND AUTHORITIES

A. **PLAINTIFF'S CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(1) BECAUSE THE COURT HAS NO SUBJECT-MATTER JURISDICTION (*I.E.*, PLAINTIFF HAS NO STANDING):**

The *Amended Complaint* should be dismissed because Plaintiff does not have standing to bring these claims. "Standing is a required element of subject matter jurisdiction and is therefore properly challenged on a 12(b)(1) motion to dismiss." *SR Partners Hulen, LLC v. JPMorgan Chase Bank, Nat. Ass'n*, No.3:10-CV-437-B, 2011 WL 2923971, at *3 (N.D. Tex. July 21, 2011) (citing *Xerox Corp. v. Genmoora Corp.*, 888 F.2d 345, 350 (5th Cir. 1989)); *see also Johnson v. Moore*, 958 F.2d 92, 94 (5th Cir. 1992) (recognizing standing is also required to obtain injunctive relief). The party seeking to invoke subject-matter jurisdiction bears the burden of demonstrating its existence. *Renne v. Geary*, 501 U.S. 312, 316 (1991) ("It is the responsibility of the complainant clearly to allege facts demonstrating that he is a proper party to invoke judicial resolution of the dispute and exercise the court's remedial powers.") (internal quotations omitted)).

To show Article III standing, Plaintiff has the burden of proving: (1) that she suffered an "injury in fact," (2) a causal relationship between the injury and the challenged conduct, and (3) that the injury likely will be redressed by a favorable decision. *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992). An "injury in fact" is a harm that is "concrete and particularized" and "actual or imminent." *Id.* at 560 (internal quotation marks and citations omitted). Plaintiff must show that she "sustained or is immediately in danger of sustaining some direct injury as the result of the challenged . . . conduct and [that] the injury or threat of injury [is] both real and immediate . . . ." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks and citations omitted). Further, "because injunctions regulate future conduct, a party seeking injunctive relief must allege . . . a real and immediate—as opposed to a merely conjectural or

hypothetical—threat of future injury." *Wooden v. Bd. of Regents Univ. Sys. of Georgia*, 247 F.3d 1262, 1284 (11th Cir. 2001).

Additionally, because the ADA provides for injunctive relief, plaintiffs who encounter architectural barriers at public accommodations have standing to bring claims only if they show a plausible intention or desire to return to the place but for the barriers to access. *See Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir. 2002); *Shotz v. Cates*, 256 F.3d 1077, 1081 (11th Cir. 2001). Indeed, intent to return to the place of injury "some day" is insufficient. *Lujan*, 504 U.S. at 564 ("Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of *when* the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." (emphasis original)).

"[A]n ADA plaintiff who seeks an injunction mandating removal of architectural barriers cannot 'manufacture standing' by simply claiming that she intends to return to the defendant's establishment." *Access 4 All, Inc. v. Boardwalk Regency Corp.*, No. 08-3817, 2010 WL 4860565, *4 (D. N.J. Nov. 23, 2010). "When analyzing this likelihood of return, courts have examined such factors as: (1) the proximity of the defendant's business to the plaintiff's residence, (2) the plaintiff's past patronage of the defendant's business, (3) the definitiveness of the plaintiff's plans to return, and (4) the plaintiff's frequency of travel near the defendant." *Access 4 All, Inc. v. Wintergreen Commercial P'ship, Ltd.*, No. 3:05-CV-1307-G, 2005 WL 2989307, at *3 (N.D. Tex. Nov. 7, 2005). Furthermore, because Plaintiff is seeking injunctive relief, "past exposure to illegal conduct does not itself present a case or controversy regarding injunctive relief . . . if unaccompanied by any continuing, present adverse effect." *Lyons*, 461 U.S. at 102.

Regarding the first factor—proximity—Plaintiff is a resident of Cuyahoga County, Ohio and Defendant's place of business is located in Austin, Texas, approximately 1,400 miles apart.

This significant distance does nothing to advance Plaintiff's required Article III standing. *See, e.g., Norkunas v. Park Road Shopping Center, Inc.*, 777 F. Supp. 2d 998, 1002 (W.D.N.C. 2011) *aff'd*, 474 F. App'x 369 (4th Cir. 2012) (same plaintiff's counsel; "the distance of 120 miles between Plaintiff's resident and [Defendant] is too great for the Court to consider it likely that Plaintiff will have occasion to return to Defendant's establishment"); *Brother v. Tiger Partner, LLC*, 331 F. Supp. 2d 1368, 1373–74 (M.D. Fla. 2004) (holding plaintiff did not have standing under the ADA when he lived 280 miles away from defendant's property, only traveled to the area once or twice a year, and lacked any "continuing connection" to the property and had not attempted to return); *Delil v. El Torito Restaurants, Inc.*, C-94-3900-CAL, 1997 WL 714866, at *4 (N.D. Cal. June 24, 1997) (the distance between plaintiff and defendant—over 100 miles—was one factor that supported the court's finding of no standing).

As for Plaintiff's alleged "past patronage" of Defendant's establishment on February 20, 2013,[2]—the second factor—this alone does not confer Plaintiff with Article III standing. *Lyons*, 461 U.S. at 102 ("Past exposure to illegal conduct does not itself show a present case or controversy regarding injunctive relief . . . if unaccompanied by continuing, present adverse effect."); *Wintergreen Commercial P'Ship*, 2005 WL 2989307, at *8 (alleged past injury—suffered during a single visit to defendant's establishment—alone is not sufficient for Article III standing).

Likewise, Plaintiff's proffered, ambiguous, intent to return to Defendant's establishment in December 2013—the third factor—is insufficient to establish Article III standing. As the U.S.

---

[2] The **same date** Plaintiff allegedly visited five other retail establishments in the Austin, Texas area—whom she has also sued in U.S. Western District of Texas—Austin Division. *See Complaint* at ¶ 11, *Kramer v. Corners Shopping Ctr. Ltd. P'ship*, No. 1:13-CV-669 (W.D. Tex. Aug. 8, 2013), ECF No. 1.; *Complaint* at ¶ 11, *Kramer v. Lamar Northwend, Ltd.*, No. 1:13-CV-596 (W.D. Tex. July 17, 2013), ECF No. 1.; *Complaint* at ¶ 11, *Kramer v. Saleem-Northgate, L.L.C.*, No. 1:13-CV-595 (W.D. Tex. July 17, 2013), ECF No. 1.; *Complaint* at ¶ 11, *Kramer v. Lakehills S., LP*, No. 1:13-CV-591 (W.D. Tex. July 16, 2013), ECF No. 1.; *Complaint* at ¶ 11, *Kramer v. HEB Grocery Co., L.P.*, No. 1:13-CV-590 (W.D. Tex. July 16, 2013), ECF No. 1.

Supreme Court has recognized, "profession of an intent to return to the places they had visited before [without any concrete plans] is simply not enough." *Lujan*, 504 U.S. at 564 (internal quotations omitted). While Plaintiff allegedly has a son in Austin, Texas, she fails to allege where her son resides in location to Defendant's establishment, the frequency with which she has visited Defendant's establishment in the past, or why her intent to visit her son in the future would also involve visiting Defendant's establishment. As such, Plaintiff wholly fails to demonstrate any "concrete plans" to return to Defendant's establishment.

Lastly, the *Amended Complaint* is devoid of any facts that would suggest Plaintiff frequently travels near Defendant's establishment. Plaintiff's alleged patronage of Defendant's establishment in February 2013, followed by an anticipated return in December 2013—a nine month gap—does not establish a pattern of frequency. Thus, the *Amended Complaint* also fails to satisfy the fourth factor.

Dismissal of a plaintiff's claim for injunctive relief under Title III of the ADA, for lack of standing, is nothing new. Courts have repeatedly dismissed Title III ADA cases, in which the plaintiffs' alleged injuries were too speculative to satisfy constitutional standing requirements. *E.g., Proctor v. Prince George's Hosp. Ctr.*, 32 F. Supp. 2d 830, 832–33 (D. Md. 1998) (no standing for deaf plaintiff denied sign language interpreter services in a hospital because any assertion plaintiff would return to hospital based on mere speculation); *Delil*, 1997 WL 714866, at *4–6 (no standing where plaintiff did not demonstrate continuing, present adverse effects because she alleged only a single incident of discrimination in a restaurant more than one hundred miles away from where she lived and worked and did not allege any concrete plans of an intent to return to the restaurant); *Naiman v. New York Univ.*, No. 95-CIV-6469, 1997 WL 249970, at *4–5 (S.D.N.Y. May 13, 1997) (although plaintiff alleged four visits to hospital and

hospital failed to provide him with effective sign language communication, no standing because plaintiff did not show he would require services of hospital in future); *O'Brien v. Werner Bus Lines*, No. 94-6862, 1996 WL 82484, at *3-6 (E.D. Pa. Feb. 27, 1996) (no standing where plaintiffs failed to show they were likely to use Werner buses in the near future); *Schroedel v. New York Univ. Med. Ctr.*, 885 F. Supp. 594, 597-600 (S.D.N.Y. 1995) (no standing where plaintiff, who was only a patient on one previous occasion, "failed to allege anything more than conjecture that the conduct complained of will injure her in the future"); *Aikins v. St. Helena Hosp.*, 843 F. Supp. 1329, 1334 (N.D.Cal.1994) (deaf plaintiff denied sign language interpreter services at the hospital treating her husband had no standing because she did not show "that defendants' alleged discrimination is ongoing and that she is likely to be served in the near future").

Likewise, Rule12(b)(1) dismissal of Plaintiff's claims is appropriate because she has no Article III standing in this lawsuit.

**B. PLAINTIFF'S CLAIMS SHOULD BE DISMISSED UNDER RULE 12(B)(6) BECAUSE SHE HAS FAILED TO STATE A SINGLE CLAIM UPON WHICH RELIEF CAN BE GRANTED:**

Rule 12(b)(6) of the FEDERAL RULES OF CIVIL PROCEDURE authorizes dismissal of a complaint for failure to state a claim upon which relief can be granted. "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678. For a claim to be plausible on its face, Plaintiff must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.*; *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 557 (2007).

Plaintiff's alleged ADA violations (scripted in *Am. Complaint*, ¶ 15) are mere conclusory allegations of architectural barriers that have no apparent relation to Defendant's establishment. Defendant's establishment is currently occupied by approximately 40 tenants in its 291,614 square feet of leasable area (*e.g.*, Sprouts Farmers Market, Hobby Lobby, Olive Garden, Fuddruckers, Pei Wei, Neiman Marcus Last Call, Starbucks). Plaintiff claims "she patronized several stores and ate lunch at Hunan Lion" (*Am. Complaint*, ¶ 7). Yet, it is unclear whether the "several stores" and "Hunan Lion" are the establishments that Plaintiff claims she visited on February 20, 2013, or whether one or more of these establishments allegedly impose the architectural barriers complained of by Plaintiff (*e.g.*, Plaintiff has still not identified the "public restroom" referenced in her *Amended Complaint*). As such, Plaintiff's allegations remain conclusory and do nothing to advance her claims.

Plaintiff's allegations that "[t]he facility lacks a continuous accessible route that connects all the accessible buildings, building elements, and accessible spaces" is a conclusory statement. Plaintiff does not allege what "accessible routes" should be provided nor does she explain how the current configuration of the sidewalks and parking lot impedes access or prohibits disabled individuals from visiting Defendant's establishment.

Similarly, Plaintiff's reference to "doors" and "curb ramps" that allegedly "create a dangerous condition to an individual in a wheelchair," and her reference to alleged ADA violations in a "public restroom," are also generic, conclusory statements. At their root, these statements are nothing more than boilerplate allegations that were lifted from the barrage of other lawsuits Plaintiff and her attorney have filed against local retail establishments. For these reasons, Plaintiff's claims must be dismissed for failure to identify any facts that would give rise to a cognizable claim upon which relief can be granted.

C.  **IN THE ALTERATIVE, PLAINTIFF SHOULD BE ORDERED TO AMEND HER *AMENDED COMPLAINT* TO PROVIDE A MORE DEFINITE STATEMENT:**

A motion for a more definite statement is proper when a complaint is so vague or ambiguous that the defendant cannot prepare a response. FED. R. CIV. P. 12(e); *see, e.g., Sisk v. Tex. Parks & Wildlife Dep't*, 644 F.2d 1056, 1059 (5th Cir. 1981). The motion for a more definite statement "must point out the defects complained of [in the complaint] and the details desired." FED. R. CIV. P. 12(e).

Defendant, strictly in the alternative, moves the Court to order Plaintiff to amend her *Amended Complaint* to make a more definite statement of the facts and legal claims she is alleging. Specifically, Defendant requests Plaintiff be ordered to:

(1) *Identify Defendant's tenants, if any, that Plaintiff allegedly visited on February 20, 2013.* Despite the fact that Plaintiff's *Amended Complaint* " claims she patronized several stores and ate lunch at Hunan Lion" (*Am. Complaint*, ¶ 7), it is unclear whether the "several stores" and "Hunan Lion" are the establishments that Plaintiff claims she visited on February 20, 2013. Additionally, Plaintiff's reference to "several stores" does nothing to clarify the establishment(s) she allegedly visited/complains of, leaving this issue entirely open-ended and prohibiting Defendant from determining whether joinder of any additional parties under Rule 19 of the FEDERAL RULES OF CIVIL PROCEDURE would be appropriate.

(2) *Describe how "[t]he facility does not have a continuous accessible route that connects all the accessible buildings, building elements, and accessible spaces."* The *Amended Complaint* is silent on how Defendant has allegedly failed to provide a "continuous accessible route." The ambiguous nature of this allegation impedes Defendant's ability to properly respond.

(3) *Identify "[t]he doors at the property [that allegedly] have excessively high thresholds."* Defendant has no way of determining which "doors" Plaintiff is referencing in the *Amended Complaint*. Given the size of Defendant's premises (291,614 square feet of leasable area), and its number of tenants (none of which are identified by Plaintiff), the *Amended Complaint* hardly provides Defendant with fair notice.

(4) *Identify "[t]he curb ramps at the facility [that allegedly] have excessively steep cross slopes."* Defendant has no way of determining which "curb ramps" Plaintiff is referencing in the *Amended Complaint*. Again, given the size of Defendant's premises (291,614 square feet of leasable area), and its number of tenants (none of which are identified by Plaintiff), the *Amended Complaint* hardly provides Defendant with fair notice.

(5) *Identify the "ramp servicing at the facility that is inaccessible to an individual in a wheelchair."* Defendant has no way of determining which "ramp servicing" Plaintiff is referencing in the *Amended Complaint*. Again, given the size of Defendant's premises (291,614 square feet of leasable area), and its number of tenants (none of which are identified by Plaintiff), the *Amended Complaint* hardly provides Defendant with fair notice.

(6) *Identify "[t]he marked accessible route at the facility [that allegedly] has an uneven surface."* Defendant has no way of determining which "marked accessible route" Plaintiff is referencing in the *Amended Complaint*. Again, given the size of Defendant's premises (291,614 square feet of leasable area), and its number of

tenants (none of which are identified by Plaintiff), the *Amended Complaint* hardly provides Defendant with fair notice.

(7) *Identify "[t]he accessible route at the facility [that allegedly] has excessively steep cross slopes."* Defendant has no way of determining which "accessible route" Plaintiff is referencing in the *Amended Complaint*. Again, given the size of Defendant's premises (291,614 square feet of leasable area), and its number of tenants (none of which are identified by Plaintiff), the *Amended Complaint* hardly provides Defendant with fair notice.

(8) *Identify the "designated accessible parking spaces that do not have wide enough access aisle for an individual in a wheelchair to utilize."* Defendant has no way of determining which "designated accessible parking spaces" Plaintiff is referencing in the *Amended Complaint*. Again, given the size of Defendant's premises (291,614 square feet of leasable area), and its number of tenants (none of which are identified by Plaintiff), the *Amended Complaint* hardly provides Defendant with fair notice.

(9) *Identify the "public restroom[s]" that are referenced in the Amended Complaint.* Defendant has no way of determining which "public restroom[s]" Plaintiff is referencing in the *Amended Complaint*. Again, given the size of Defendant's premises (291,614 square feet of leasable area), and its number of tenants (none of which are identified by Plaintiff), the *Amended Complaint* hardly provides Defendant with fair notice.

(10) *Identify the other "ADA violations" that are referenced in Paragraph 16 of the Amended Complaint.* Plaintiff's catch-all claim that paragraph 15 of the *Amended Complaint* is not an exclusive list of Defendant's ADA violations does not provide

Plaintiff with fair notice. Without fair notice, Defendant cannot prepare a complete response—*e.g.*, determine what alleged barriers are at issue, whether the allegations implicate an additional party (*i.e.*, tenant), or whether the allegations pertain to alleged barriers that existed prior to the passage of the ADA.

## IV.
## CONCLUSION

For these reasons, Defendant would respectfully request the Court to grant its Rule 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction. Should the Court find it has subject-matter jurisdiction, Defendant requests the Court grant its Rule 12(b)(6) Motion to Dismiss for Plaintiff's Failure to State a Claim. In the alternative, Defendant requests the Court enter an order requiring Plaintiff to make a more definite statement of the facts and legal claims she is asserting, as requested herein. Finally, Defendant requests the Court grant it all such other relief, at law or in equity, to which it may be justly entitled.

              Respectfully submitted,

              THOMPSON, COE, COUSINS & IRONS, LLP

              By: /s/ Barry A. Moscowitz
                   Barry A. Moscowitz, Lead Counsel
                   State Bar No. 24004830
                   Jason T. Weber
                   State Bar No. 24075251

              700 North Pearl Street, 25th Floor
              Dallas, Texas 75201
              Telephone:  (214) 871-8200
              Facsimile:   (214) 871-8209
              E-mail:  bmoscowitz@thompsoncoe.com
              E-mail:  jweber@thompsoncoe.com

              **ATTORNEYS FOR DEFENDANT**
              **BRODIE OAKS CENTER, LTD.**

## CERTIFICATE OF SERVICE

     Pursuant to Rules 5(b)(2)(E) and 5(b)(3) of the FEDERAL RULES OF CIVIL PROCEDURE, I hereby certify a true and correct copy of the foregoing document was filed electronically on this 19th day of September 2013. Parties may access this filing through the court's system. Notice of this filing will be sent to all parties by operation of the court's electronic filing system.

              /s/ Barry A. Moscowitz
              Barry A. Moscowitz