**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TEXAS**
**AUSTIN DIVISION**

| | | |
|---|---|---|
| **BONNIE KRAMER** | § | |
| | § | |
| **v.** | § | **A-13-CA-670 LY** |
| | § | |
| **BRODIE OAKS CENTER, LTD.** | § | |

**REPORT AND RECOMMENDATION**
**OF THE UNITED STATES MAGISTRATE JUDGE**

TO:   THE HONORABLE LEE YEAKEL
        UNITED STATES DISTRICT JUDGE

Before the Court are: Defendant's Amended 12(b)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction and 12(b)(6) Motion to Dismiss for Plaintiff's Failure to State a Claim, or in the Alternative, for a More Definite Statement (Dkt. # 9), filed on September 19, 2013; Plaintiff's Opposition to Defendant's Motion to Dismiss and for a More Definite Statement (Dkt. # 13), filed on October 7, 2013; and Defendant's Reply to Plaintiff's Response (Dkt. # 15), filed on October 14, 2013. On October 8, 2013, the District Court referred this case to the instant Magistrate Court for Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas, as amended.

## I.  GENERAL BACKGROUND

On August 9, 2013, Plaintiff Bonnie Kramer ("Kramer") filed this lawsuit under Title III of the Americans With Disabilities Act against Brodie Oaks Center, Ltd., ("Brodie Oaks") a retail shopping center located in Austin, Texas.[1] Kramer has multiple sclerosis, ambulates in a wheelchair,

---

[1] Kramer is a prolific filer and has filed more than 20 lawsuits in the Western District of Texas. The majority of these lawsuits have settled or were voluntarily dismissed by Kramer. Several of this lawsuits are currently pending before the District Court. *See* 1:13-CV-590- LY; 1:13-CV-591

and qualifies as a disabled person within the meaning of the ADA.  She resides in Cuyahoga County, Ohio.  According to her Amended Complaint, on February 20, 2013, she was visiting her son in Austin, Texas, and patronized Brodie Oaks.  Kramer alleges that during her shopping trip at Brodie Oaks, she encountered numerous architectural barriers which discriminated against her on the basis of her disability.  Kramer alleged in her Amended Complaint that she had plans to patronize Brodie Oaks again in December 2013, when she was going to return to Austin to visit her son.  She seeks injunctive relief for the removal of the alleged architectural barriers, attorney's fees, litigation expenses, and costs pursuant to the ADA, 42 U.S.C. § 12181 et seq.

On September 19, 2013, Brodie Oaks filed the Motion to Dismiss under Rules 12(b)(1), 12(b)(6), and 12(e) of the Federal Rules of Civil Procedure, arguing that Kramer's lawsuit should be dismissed because (1) she lacks standing to seek the injunctive relief requested in her Amended Complaint; and (2) she fails to state a valid claim for relief under the ADA.  In the alternative, Brodie Oaks requests that the Court order Kramer to file a More Definite Statement.

## II.  ANALYSIS

The ADA is a "broad mandate" of "comprehensive character" and "sweeping purpose" intended "to eliminate discrimination against disabled individuals, and to integrate them into the economic and social mainstream of American life." *PGA Tour, Inc. v. Martin*, 532 U.S. 661, 675 (2001) (citation and quotation marks omitted).  The ADA forbids discrimination against persons with disabilities in three major areas of public life: employment, which is covered by Title I of the statute;

---

LY; 1:13-CV-596-LY; 1:13-CV-673-LY; 1:13-CV-777-LY; 1:13-CV-845-LY; and 1:13-CV-903-LY.  Recently, in *Kramer v. Lakehills South, LP*, A-13-DV-591 LY, the undersigned issued a Report and Recommendation recommending that the District Court deny the defendant's motion to dismiss, in which the defendant raised the same arguments raised here.  See R&R, issued January 7, 2014 (Dkt. # 25), adopted by the District Court on January 29, 2014 (Dkt. # 26).

public services, programs, and activities, which are the subject of Title II; and public accommodations, which are covered by Title III. *Tennessee v. Lane*, 541 U.S. 509, 516-17 (2004). Kramer has filed this suit pursuant to Title III of the ADA, which prescribes that: "No individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a). "Remedies available under Title III of the ADA are the same as those under Title II of the Civil Rights Acts of 1964, 42 U.S.C. § 2000a et seq., for which there is only injunctive relief." *Frame v. City of Arlington*, 575 F.3d 432, 438 n. 5 (5th Cir. 2009).

As noted, Brodie Oaks argues that Kramer's lawsuit should be dismissed under Rule 12(b)(1) for lack of standing and under Rule 12(b)(6) for failure to state a valid claim for relief under the ADA.  "When a Rule 12(b)(1) motion is filed in conjunction with other Rule 12 motions, the court should consider the Rule 12(b)(1) jurisdictional attack before addressing any attack on the merits." *Ramming v. United States*, 281 F.3d 158, 161 (5th Cir. 2001) (*citing Hitt v. City of Pasadena*, 561 F.2d 606, 608 (5th Cir. 1977)), *cert. denied*, 536 U.S. 960 (2002).  Accordingly, the Court will address Defendant's Rule 12(b)(1) Motion first and determine whether Kramer has standing under the ADA to bring this lawsuit.

## A.     Defendant's Rule 12(b)(1) Motion to Dismiss

Federal Rule of Civil Procedure Rule 12(b)(1) permits the dismissal of an action for the lack of subject matter jurisdiction.  Federal courts are tribunals of limited subject matter jurisdiction and may only entertain a case that fits within the judicial power of Article III of the Constitution and a statutory grant of subject matter jurisdiction, such as federal question jurisdiction under 28 U.S.C. § 1331 and diversity of citizenship jurisdiction under 28 U.S. C. § 1332(a)(1).  13D CHARLES ALAN

WRIGHT, ARTHUR R. MILLER. EDWARD H. COOPER, & RICHARD D. FREER, FEDERAL PRACTICE AND PROCEDURE § 3567 (3d ed. 2008).   Subject matter jurisdiction includes the "irreducible constitutional minimum of standing." *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560 (1992).

    In order to demonstrate standing, a plaintiff first must demonstrate she suffered "injury in fact," which means invasion of a legally protected interest that is both "concrete and particularized" and "actual or imminent, not conjectural or hypothetical." *Lujan*, 504 U.S. at 560.  Second, standing requires a causal connection between the conduct complained of and the injury plaintiff suffered. *Id.*  "Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision." *Id.* at 561 (internal citations and quotation marks omitted).  The party invoking federal jurisdiction bears the burden of proof for establishing these elements. *Id.*  General factual allegations at the pleading stage may suffice since on a motion to dismiss courts "presum[e] that general allegations embrace those specific facts that are necessary to support the claim." *Id.* (internal citations and quotation marks omitted).

    Where a plaintiff seeks declaratory and injunctive relief, as in this case, the plaintiff must also show a significant possibility of future harm; it is insufficient to demonstrate only past injury.  *See O'Shea v. Littleton*, 414 U.S. 488, 495 (1974); *City of Los Angeles v. Lyons*, 461 U.S. 95, 105 (1983).  Neither the Supreme Court nor the Fifth Circuit has specifically addressed standing issues in the Title III ADA context.  For guidance in the Title III area, many courts have relied on the Supreme Court's opinions in *Lujan* and *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983), despite the fact that these cases do not deal with the ADA and involve very different factual scenarios.[2]  In *Lyons*, the Supreme Court found that the plaintiff lacked standing to seek declaratory

---

[2]See *Betancourt v. Federated Dep't Stores*, 732 F. Supp.2d 693 (W.D. Tex. 2010) and *Betancourt v. Ingram Park Mall, L.P.*, 735 F. Supp.2d 587 (W.D. Tex. 2010), for a thorough and in-

and injunctive relief prohibiting the City's police department from using chokeholds because of "the speculative nature of Lyons' claim of future injury." 461 U.S. at 111. The Court held that a "plaintiff must show that he 'has sustained or is immediately in danger of sustaining some direct injury' as the result of the challenged official conduct. *Id.* at 102. The Court found that the plaintiff failed to demonstrate this because he failed to allege that he would have another encounter with the police and further allege either "(1) that *all* police officers in Los Angeles *always* choke any citizen with whom they happen to have an encounter, whether for the purpose of arrest, issuing a citation, or for questioning, or (2) that the City ordered or authorized police officers to act in such manner." *Id.* at 105-06.

In *Lujan*, environmental groups brought an action challenging a regulation of the Secretary of the Interior which required other agencies to confer with him under the Endangered Species Act only with respect to federally funded projects in the United States and on the high seas. The plaintiffs sought an injunction requiring the Secretary of the Interior to promulgate a new rule extending the geographic coverage to foreign nations. In addressing standing, the Court stated:

> When the suit is one challenging the legality of government action or inaction, the nature and extent of facts that must be averred (at the summary judgment stage) or proved (at the trial stage) in order to establish standing depends considerably upon whether the plaintiff is himself an object of the action (or forgone action) at issue. If he is, there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it. When, however, as in this case, a plaintiff's asserted injury arises from the government's allegedly unlawful regulation (or lack of regulation) of someone else, much more is needed. In that circumstance, causation and redressability ordinarily hinge on the response of the regulated (or regulable) third party to the government action or inaction—and perhaps on the response of others as well. The existence of one or more of the essential elements of standing depends on the unfettered choices made by independent actors not before the courts and whose exercise of broad and legitimate discretion the courts cannot presume either to control or to predict, and it

depth discussion of this issue.

5

> becomes the burden of the plaintiff to adduce facts showing that those choices have been or will be made in such manner as to produce causation and permit redressability of injury. Thus, when the plaintiff is not himself the object of the government action or inaction he challenges, standing is not precluded, but it is ordinarily "substantially more difficult" to establish.

*Id.* at 561-62. In holding that the plaintiffs did not assert sufficiently imminent injury to have standing, the Court found that to show standing plaintiff had to show "not only that listed species were in fact being threatened by funded activities abroad, but also that one or more of respondents' members would thereby be 'directly' affected apart from their 'special interest' in th[e] subject." *Id.* at 563. The plaintiffs had no specific future plans to go abroad and observe the endangered species, and thus the Court concluded that their "profession of an 'inten[t]' to return to the places they had visited before . . . is simply not enough. Such 'some day' intentions—without any description of concrete plans, or indeed even any specification of when the some day will be—do not support a finding of the 'actual or imminent' injury that our cases require." *Id*

Numerous courts have applied *Lyons* and *Lujan* to hold that a plaintiff lacks standing to seek injunctive relief under Title III of the ADA unless she alleges a concrete, particularized and credible plan to return to the public accommodation in question on a specific future date. *Bentancourt*, 732 F. Supp.2d at 703. These courts have found that the likelihood of future injury is measured by whether the plaintiff is "likely to return" to the defendant's business, which is determined by considering four factors: (1) the plaintiff's proximity to the defendant's place of public accommodation; (2) the plaintiff's past patronage of the defendant's business; (3) the definitiveness of the plaintiff's plan to return; and (4) the plaintiff's frequency of travel near the defendant. *See e.g., Norkunas v. Park Road Shopping Center, Inc.*, 777 F. Supp.2d 998, 1002 (W.D.N.C. 2011).

Brodie Oaks relies on the "intent to return" test to argue that Kramer has failed to demonstrate standing since she has failed "to demonstrate any 'concrete plans' to return to Defendant's establishment." Defendant's Brief at p. 8. This "intent to return" approach, however, has been severely criticized by a number of commentators and courts. *Betancourt*, 732 F. Supp.2d at 703. These commentators note that allowing standing in most Title III cases is actually consistent with the holdings in *Lyons* and *Lujan* since "the 'odds' of the injury recurring are certain where a building is not in compliance with the ADA," and the plaintiff and "every other person with the same disability" will confront the same barrier on every future visit. *Id.* (quoting Adam A. Milani, Wheelchair Users Who Lack "Standing": Another Procedural Threshold Blocking Enforcement of Titles II and III of the ADA, 39 WAKE FOREST L. REV. 69, 113 (Spring 2004)). Moreover, disabled plaintiffs should not have to establish imminent future injuries because "they have an actual and present injury—they are currently deterred from visiting a building." *Id.*

Numerous courts have rejected the "intent to return" theory, and instead have relied on the "deterrent effect" doctrine in determining whether a Title III plaintiff has established standing.[3]

---

[3]*See Scherr v. Marriott Int'l, Inc.*, 703 F.3d 1069, 1074-75 (7th Cir. 2013) (finding that plaintiff had standing to sue hotel given her past travel history and her affirmative desire to stay at the hotel but for the alleged violations); *Pickern v. Holiday Quality Foods, Inc.*, 293 F.3d 1133, 1138 (9th Cir.) (holding that the plaintiff had Article III standing because "a disabled individual who is currently deterred from patronizing a public accommodation due to a defendant's failure to comply with the ADA has suffered 'actual injury'" for standing purposes), *cert. denied*, 537 U.S. 1030 (2002); *Steger v. Franco, Inc.*, 228 F.3d 889, 892 (8th Cir. 2000) (noting that ADA plaintiffs need not engage in the "futile gesture" of visiting a building containing known barriers that the owner has no intention of remedying); *Hunter v. Branch Banking and Trust Co.*, 2013 WL 4052411, at * 3 (N.D. Tex. Aug. 12, 2013) (noting that "[t]he second recognized way to establish injury-in-fact is for the plaintiff to show that she is continually injured by being deterred from making use of the allegedly noncompliant public accommodation); and *Betancourt*, 732 F. Supp.2d at 709 ("any disabled plaintiff who alleges that she is being denied the opportunity to visit or is currently being deterred from visiting a public accommodation that is violating Title III alleges sufficient present injury in fact for prospective equitable relief.").

Under this theory, a disabled individual suffers a cognizable injury if he is *deterred* from visiting a noncompliant public accommodation because he has encountered barriers related to his disability there. *Chapman v. Pier 1 Imports*, 631 F.3d 939, 950 (9th Cir. 2011). "Just as a disabled individual who intends to return to a noncompliant facility suffers an imminent injury from the facility's existing or imminently threatened noncompliance with the ADA, a plaintiff who is deterred from patronizing a store suffers the ongoing actual injury of lack of access to the store." *Id.* (internal quotation marks and citation omitted). "This theory is predicated on the ADA's language stating that a plaintiff need not 'engage in a futile gesture if such person has actual notice that a person or organization . . . does not intend to comply" with the ADA. *Hunter*, 2013 WL 4052411 at * 3 (quoting 42 U.S.C. § 12188(a)(1)). The Fifth Circuit appears to have endorsed this theory in *Frame v. City of Arlington*, 657 F.3d 215, 236 (5th Cir. 2011) (a Title II ADA case), *cert. denied*, 132 S.Ct. 1561 (2012), when it stated that "a disabled individual need not engage in futile gestures before seeking an injunction; the individual must show only that [the inaccessible object or place] affects his activities in some concrete way." Thus, "in an ADA Title III case, the risk of injury in fact is not speculative so long as the alleged discriminatory barriers remain in place, the plaintiff remains disabled, and the plaintiff is 'able and ready' to visit the facility once it is made compliant. If the disabled plaintiff returns to the location, the same discrimination will occur until the facility is made compliant." *Betancourt*, 732 F. Supp.2d at 709.

Applying the "deterrent effect" theory to the instant case, Kramer has alleged sufficient facts to establish standing to bring this Title III lawsuit. Kramer alleges that she visited the shopping center at issue and that she encountered numerous ADA violations in the form of architectural barriers that deprived her of the use and enjoyment of the stores' goods and services and by

endangering her safety.[4]  Furthermore, Kramer alleged that while she would like to visit the shopping

center again during the trip she had planned to Austin for December 2013, she notes that "it would

be a futile gesture to visit Defendant's mall unless and until it is brought into compliance with the

Americans with Disabilities Act."  Kramer Aff. at ¶ 10.  Although that date has now come and

passed, at the time the pleading was filed, December 2013 was in the future.  Further, it is fair to

infer from the pleaded fact that Kramer's son resides in Austin, she is likely to return again in the

future.  This is sufficient at the pleading stage to show standing.[5]  Accordingly, Brodie Oaks' Rule

12(b)(1) Motion to Dismiss should be denied.

**B.      Defendant's 12(b)(6) Motion to Dismiss**

Brodie Oaks also argues that Kramer's case should be dismissed for failure to state a claim

under Rule 12(b)(6).  Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss an

action for  failure to state a claim upon which relief can be granted.  FED. R. CIV. P. 12(b)(6).  In

deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, "[t]he court accepts all

well-pleaded facts as true, viewing them in the light most favorable to the [nonmovant]."  *In re*

*Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (internal quotation marks omitted),

---

[4] Defendant complains that Plaintiff is a self-described "tester."  However, the fact that a disabled plaintiff in a Title III case is a "tester" does not change the analysis or outcome with regard to standing.  *See Bentacourt*, 732 F. Supp2d at 710.

[5] *See Doran v. 7-Eleven, Inc.*, 524 F.3d 1034, 1040 (9th Cir. 2008) (holding that plaintiff suffered an injury that is concrete and particularized because he alleged in his amended complaint that he personally suffered discrimination as a result of the barriers in place during his visits to 7–Eleven and that those barriers have deterred him on at least four occasions from patronizing the store and he plans on visiting the store once a year during his trips to Disneyland); *Betancourt*, 732 F. Supp.2d at 710-11 (holding that plaintiff alleged sufficient facts to establish standing even though she lived over 700 miles from property in question where it would be futile for plaintiff to visit store again since still noncompliant).

*cert. denied*, 552 U.S. 1182 (2008).  To survive the motion, a nonmovant must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  "The court's task is to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Lone Star Fund V (U.S.), L.P. v. Barclays Bank PLC*, 594 F.3d 383, 387 (5th Cir. 2010).  "Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact)." *Id*. at 555.  "A claim has facial plausibility when the [nonmovant] pleads factual content that allows the court to draw the reasonable inference that the [movant] is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." *Id.*

Rule 8(a)(2) of the Federal Rules of Civil Procedure requires that a complaint contain "a short and plain statement of the claim showing that the pleader is entitled to relief," FED. R. CIV. P. 8(a)(2), "in order to give the defendant fair notice of what the claim is and the grounds upon which it rests. *Twombly*, 550 U.S. at 555 (internal quotation marks and ellipsis omitted).  Although a complaint need not contain detailed factual allegations, the "showing" contemplated by Rule 8 requires the plaintiff to do more than simply allege legal conclusions or recite the elements of a cause of action. See *Id.* at 555 & n. 3. Thus, while a court must accept all of the factual allegations in the complaint as true, it need not credit bare legal conclusions that are unsupported by any factual underpinnings. See *Iqbal*, 556 U.S. at 679 ("While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations").

To state a prima facie claim under Title III of the ADA, a plaintiff must show: (1) that she is "disabled" as defined by the ADA; (2) that the defendant is a private entity that owns, leases, or operates a place of public accommodation; and (3) that the defendant discriminated against the plaintiff because of the plaintiff's disability.  42 U.S.C. § 12182(a).  *See also, Smith v. Bastrop Medical Clinic, P.A., Inc.*, 2011 WL 3844223, at * 4 (W.D. Tex. Aug. 29, 2011).  To prevail in a claim of discrimination based on an architectural barrier, plaintiffs must also prove that (1) the existing facility presents an architectural barrier prohibited under the ADA, and (2) the removal of the barrier is readily achievable.  *Greer v. EDK Allen II LP*, 2011 WL 1656406, at * 3 (E.D. Tex. March 8, 2011).

Kramer alleges that during her shopping trip to Brodie Oaks, she encountered numerous architectural barriers at the property which discriminated against her on the basis of his disability, including the following:

a. The facility does not have a continuous accessible route that connects all the accessible buildings, building elements, and accessible spaces to that an individual in a wheelchair can access all the buildings, elements, and spaces.

b. The doors at the property have excessively high thresholds which create a dangerous condition to an individual in a wheelchair.

c. The curb ramps at the facility have excessively steep cross slopes which create a dangerous condition to an individual in a wheelchair.

d. There is ramp servicing at the facility that is inaccessible to an individual in a wheelchair.

e. The marked accessible route at the facility has an uneven surface which creates a dangerous condition to an individual in a wheelchair.

f. The accessible route at the facility has excessively steep cross slopes that create a dangerous condition to an individual in a wheelchair.

g. There are designated accessible parking spaces that do not have wide enough

11

access aisles for an individual in a wheelchair to utilize.

h. There are exposed pipes under the sink in the public restroom which create a dangerous condition to an individual in a wheelchair.

i. There is insufficient clearance in the toilet compartment of the public restroom for an individual in a wheelchair to utilize such.

j. The dispensers in the public restroom are located too high for an individual in a wheelchair to reach.

k. The grab-bars in the toilet compartment of the public restroom are inaccessible to an individual in a wheelchair.

l. There is insufficient knee and toe clearance at the sink in the public restroom in order for an individual in a wheelchair to utilize such.

m. Defendant maintains a policy that allows for trash receptacles to obstruct access to the paper towel dispenser in the public restroom.

n. The toilet flush in the public restroom is not located on the wide side of the toilet, thus causing an individual to have to reach across their own wastes in order to utilize the facility.

Plaintiff's Amended Complaint, at ¶ 15.  Clearly, Kramer has alleged sufficient facts to support her ADA claims under the liberal pleading requirements of Rules 8 and 12(b)(6).  Accordingly, Brodie Oaks' Motion to Dismiss under Rule 12(b)(6) should be denied.  The Court also finds that Defendant's Alternative Motion for a More Definite Statement is without merit and should be denied.

## III.  RECOMMENDATION

Based upon the foregoing, the Magistrate Court **RECOMMENDS** that the District Court **DENY** Defendant's Amended 12(B)(1) Motion to Dismiss for Lack of Subject-Matter Jurisdiction and 12(b)(6) Motion to Dismiss for Plaintiff's Failure to State a Claim, or in the Alternative, for a More Definite Statement (Dkt. # 9) in its entirety.

## IV.  WARNINGS

The parties may file objections to this Report and Recommendation.  A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections.  *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987).

A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from *de novo* review by the District Court of the proposed findings and recommendations in the Report and, except upon grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court.  *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53, 106 S. Ct. 466, 472-74 (1985);  *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

To the extent that a party has not been served by the Clerk with this Report & Recommendation electronically pursuant to the CM/ECF procedures of this District, the Clerk is directed to mail such party a copy of this Report and Recommendation by certified mail, return receipt requested.

SIGNED this 21st day of February, 2014.

_____

ANDREW W. AUSTIN
UNITED STATES MAGISTRATE JUDGE